UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA SHEIKHALIZADEHJAHED,<br><br>    Plaintiff,<br><br>    v.<br><br>ERIC GAUDIOSI, et al.,<br><br>    Defendants. | No.  2:24-cv-1136 SCR<br><br><br><u>ORDER</u> |

This action is before the undersigned pursuant to the consent of the parties under Eastern District of California Local Rule 305 and 28 U.S.C. § 636(c)(1).  ECF No. 9.  Defendants move to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative for summary judgment.  ECF No. 7.  Plaintiff opposes the motions.  ECF No. 10.  On September 26, 2024, the Court heard argument on these motions and took them under submission.  For the reasons stated below, the motion to dismiss is denied. The motion for summary judgment is denied without prejudice to allow for further development of the record.

## I.   Background

### A.  The Complaint

On April 17, 2024, Plaintiff Sara Sheikhalizadehjahed filed a complaint against Defendants Eric Gaudiosi, Deputy Chief of Mission for the United States Embassy in the United

1

Arab Emirates (UAE), and Antony Blinken, Secretary of the Department of State (DOS), alleging three causes of action: (1) unreasonable delay in reviewing and adjudicating her father's visa application in violation of § 706(1) of the Administrative Procedure Act (APA), 28 U.S.C § 706(1); (2) delay in reviewing and adjudicating her father's visa application in violation of § 1361 the Mandamus Act, 28 U.S.C. § 1361; and (3) delay in adjudicating her father's visa application in violation of her Fifth Amendment due process rights.  ECF No. 1 at 1, 5, 7-10.

Plaintiff presents the following factual allegations.  In August 2019, she filed a visa petition with United States Citizenship and Immigration Services (USCIS) for her father, Naser Sheikhalizadehjahed.  *Id.* at 2, 6.  In May 2020, USCIS approved the visa petition.  *Id.*  In February 2023, her father attended an interview at the United States Embassy in the UAE.  *Id.* at 6.  After the interview, they were informed that the visa was refused under Immigration and Nationality Act (INA) § 221(g) and her father's case was placed in "administrative processing." *Id.*  Administrative processing is a temporary measure that allows Defendants to gather additional information.  *Id.* at 6-7.  Since the interview, Plaintiff and her father have sought updates, but have received no meaningful responses.  *Id.* at 7.  It is unclear to Plaintiff what, if anything, Defendants are doing to complete adjudication of her father's visa.  *Id.*  This indefinite delay on Plaintiff's reunification with her father has caused her "significant personal, financial, and emotional hardship," including, but not limited to, depression, requiring medication and regular mental health services; marital strain; inability to concentrate on work, putting her employment at risk; and physical separation from her family.  *Id.*

### B.  Motions to Dismiss and for Summary Judgment

Defendants filed a motion to dismiss, or in the alternative, motion for summary judgment on three grounds: (1) under the doctrine of consular nonreviewability, the courts cannot review consular actions on visa applications; (2) even if court review were available, Defendants "do not owe Plaintiff's father a nondiscretionary duty to reconsider, within a specified timeframe;" and (3) the 14- or 16-month delay in this case in not unreasonable.  ECF No. 7 at 4.  Plaintiff filed a motion to file a sur-reply which the court now grants.

////

2

### C.  Immigrant Visa Process

An immigrant visa processing based on a familial relationship involves a two-step process.  *Dep't of State v. Munoz*, 144 S.Ct. 1812, 1818 (2024).  The two-step process operates differently depending on various factors, such as the status of the petitioner, the familial relationship between the petitioner and the beneficiary, the location of the beneficiary at the time they are applying (e.g. applying inside or outside the United States), and if applying within the United States, whether that person can adjust status in the United States or has to depart and go through consular processing.  *See* 8 U.S.C. §§ 1151, 1154, 1255(a).  Here, because the case involves a U.S. citizen petitioner and a parent beneficiary abroad, the Court describes the two-step process for an "immediate relative" abroad.  8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A); 8 C.F.R. § 204.1(a)(1).

At step one, the U.S. citizen or lawful permanent resident (LPR) files a petition with USCIS to establish a qualifying relationship between the U.S. citizen or LPR petitioner and the beneficiary.  *See Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 46–47 (2014) (plurality opinion); 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A); 8 C.F.R. § 204.1(a)(1).  If USCIS approves the petition, the noncitizen beneficiary proceeds to step two—application for a visa.

At step two, if the noncitizen visa applicant is abroad, USCIS sends the approved petition to DOS's National Visa Center (NVC) for processing.  8 U.S.C. §§ 1154(b), 1201, 1202.  In processing the visa application, a consular officer interviews the immigrant.  8 U.S.C. § 1202(h).  "When a visa application has been properly completed and executed before a consular officer . . . the consular officer must [1] issue the visa, [2] refuse the visa under INA § 212(a) or § 221(g) or other applicable law or, [3] pursuant to an outstanding order under INA § 243(d), discontinue granting the visa."  22 C.F.R. § 42.81(a); *see* 8 U.S.C. §§ 1201(a), (g).  Under INA § 221(g), if a consular officer determines that a noncitizen is ineligible to receive a visa, the visa is refused.  8 U.S.C. § 1201(g).[1]

Whenever a consular officer believes the information provided in a visa application "is

---

[1]  Section 1201(g) of Title 8 of the United States Code codifies INA § 221(g).

1  inadequate to determine the [noncitizen's] eligibility to receive an immigrant visa," the officer

2  "may require the submission of additional information or question the [noncitizen] on any

3  relevant matter."  42 C.F.R. § 42.63(c).  Additional statements or information provided by the

4  visa applicant become part of the visa application and "are considered papers submitted with the

5  [noncitizen's] application within the meaning of INA § 221(g)(1)."  *Id.*

6       Regulations establish certain timelines for any post-refusal processing.  "If a visa is

7  refused, and the applicant within one year from the date of refusal adduces further evidence

8  tending to overcome the ground of ineligibility on which the refusal was based, the case shall be

9  reconsidered."  22 C.F.R. § 42.81(e) (emphasis added).  "[I]f, within one year following the

10  refusal of the immigrant visa application under INA § 221(g), the [noncitizen] has failed to

11  present to a consular officer evidence purporting to overcome the basis for the refusal" the

12  noncitizen's "registration for an immigrant visa shall be terminated."  22 C.F.R. § 42.83(b).

13                      **II.**      **Legal Standard**

14       **A.  Rule 12(b)(6)**

15       A defendant may move to dismiss a claim that "fail[s] to state a claim upon which relief

16  can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the plaintiff's

17  complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

18  is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.

19  v. Twombly*, 550 U.S. 544, 570 (2007)).

20       A claim is facially plausible "when the plaintiff pleads factual content that allows the

21  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

22  *Iqbal*, 556 U.S. at 678.  This standard is a "context-specific task that requires the reviewing court

23  to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and to "draw all

24  reasonable inferences in favor of the nonmoving party."  *Boquist v. Courtney*, 32 F.4th 764, 773

25  (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d

26  938, 945 (9th Cir. 2014) (internal quotation marks omitted)).  Such standard "requires more than

27  labels and conclusions, and a formulaic recitation of the elements."  *Twombly*, 550 U.S. at 555.

28       "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the

non-movant can prove no set of facts to support its claims." *Boquist*, 32 F.4th at 773-74 (cleaned up).

### B. Motion for Summary Judgment

Summary judgment is appropriate when the moving party has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

The moving party bears the initial "burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This can be done by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the … presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). "This burden is not a light one." *In re Oracle*, 627 F.3d at 387. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

If the moving party meets its burden, the burden then shifts to the non-moving party to "designate specific facts showing a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotation marks omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. If facts are unavailable to the non-moving party, the non-

1    moving party should file an affidavit or declaration specifying the reasons "it cannot present facts

2    essential to justify its opposition." Fed. R. Civ. P. 56(d).  Upon such a showing, Rule 56(d)

3    "require[s], rather than merely permit[s], discovery 'where the nonmoving party has not had the

4    opportunity to discovery information that is essential to its opposition.'"  *Metabolife Int'l Inc. v.*

5    *Wornick*, 264 F.3d 832, 849 (9th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

6    242, 250 n. 5 (1986) (referring to former Rule 56, subd. (f)); *see also* Fed. R. Civ. P. 56, Advisory

7    Committee's Notes (2010 Amendments, "subdivision (d) carri[ed] forward without substantial

8    change the provisions of former subdivision (f)").

9         In deciding a summary judgment motion, the Court must view the evidence in the light

10   most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Messick v.*

11   *Novartis Pharm. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372,

12   378 (2007)).  However, a mere "scintilla of evidence" in support of the non-moving party's

13   position is insufficient; "there must be evidence on which the jury could reasonably find for the

14   [non-moving party]." *Anderson*, 477 U.S. at 252.

### III.    Analysis

**A.  The Doctrine of Consular Nonreviewability Does Not Apply**

**1.   The Parties' Positions**

18        Defendants argue that Plaintiff's claims should be dismissed because the doctrine of

19   consular nonreviewability applies in this case, where on February 21, 2023, the consular officer

20   completed his nondiscretionary duty to review and adjudicate Plaintiff's father's visa application

21   by refusing it under 8 U.S.C. § 1201(g).  ECF No. 7 at 7 (citing *Bechirian v. Blinken*, No. 20-

22   55913, 2022 WL 260052 (9th Cir. Jan. 2022)).  Defendants further argue that the doctrine applies

23   regardless of whether the decision is subject to possible re-adjudication or mischaracterized as

24   non-final.  ECF No. 7 at 6-8 (citing *Allen v. Milas*, 896 F.3d 1094, 1108-09 (9th Cir. 2018)).

25   Defendants insist that "the existence of a procedural mechanism to overcome a visa refusal does

26   not undermine the fact that a § 1201(g) refusal concludes the consular officer's adjudication of

27   the visa application."  ECF No. 7 at 8 (citing several federal district court cases).  In other words,

28   Defendants' position is that refusal of a visa is a denial of the visa that is final and subject to the

1   doctrine of consular nonreviewability.

2          In opposition, Plaintiff responds that the doctrine does not apply when a case is "refused

3   under 8 U.S.C. § 1201(g) and placed in "administrative proceedings" because a consular officer

4   has not issued a "final" decision.  ECF No. 10 at 12-16.  Plaintiff cites to the DOS's own website

5   and several cases supporting her position.  ECF No. 10 at 13-14.  She also distinguishes from

6   *Bechirian* and argues that a communication received regarding ongoing "administrative

7   processing" of her father's visa further supports the conclusion that final adjudication has not

8   been completed.[2]  ECF No. 10 at 15.

9          In reply, Defendants primarily rely on *Department of State v. Muñoz*, 144 S.Ct. 1812

10  (2024), which the Supreme Court's decided after Defendants filed their motion to dismiss.  ECF

11  No. 11 at 2.

12                              **2.  Analysis**

13         Consular nonreviewability generally insulates a consular officer's decision to deny a visa

14  from judicial review.  *Muñoz*, 144 S.Ct. at 1820.  When consular nonreviewability otherwise

15  applies, there is a narrow exception when the visa denial impinges on the constitutional rights of a

16  U.S. citizen.  *Id.*  However, the doctrine of consular nonreviewability does not apply to Plaintiff's

17  delay-related claims at all.  In those claims, Plaintiff challenges only the delay in rendering a final

18  decision on a visa application and not the decision itself.

19         *Muñoz* does not control cases where the substantive cause of action is a delayed decision.

20  In *Muñoz*, the Supreme Court addressed the constitutional-rights-of-a-U.S. citizen exception to

21  consular nonreviewability.  There, the plaintiff, a U.S. citizen, sought a visa for her spouse.  *Id.* at

22  1818.  Pursuant to the visa process, plaintiff's spouse left the United States for consular

23  interviews in El Salvador.  *Id.*  After several such interviews, a consular officer denied his

24  application, citing a specific ground of inadmissibility under 8 U.S.C. § 1182.  *Id.* at 819.

---

[2]  Plaintiff quotes the communication without specifying the date it was received, its author, or any other contextual information. This is one of many instances where Plaintiff's counsel makes casual references to purported evidence without a declaration contextualizing and authenticating that evidence or a request for judicial notice. However, Plaintiff's complaint alleges that her father's visa application was "placed in administrative processing" (ECF No. 1 at 20) and so the Court credits the basic point.

1    Plaintiff and her spouse pressed for reconsideration and submitted evidence to refute the ground

2    of inadmissibility, but DOS affirmed the consulate's determination. *Id.* The consul in El

3    Salvador then informed them that the "application had gone through multiple rounds of review—

4    including by the consular officer, consular supervisors, the consul himself, the Bureau of

5    Consular Affairs, and the State Department's Immigration Visa Unit—and none of these reviews

6    had revealed any grounds to change the finding of inadmissibility." *Id.* (internal quotations

7    omitted).

8          After the decision was final, plaintiff sued DOS, arguing that DOS violated her

9    "constitutional liberty interest in her husband's visa application by failing to give a sufficient

10    reason why [her husband] is inadmissible under the unlawful activity bar." *Id.* (internal

11    quotations omitted). The Supreme Court took the case to address two issues: (1) whether the visa

12    denial of a U.S. citizen's noncitizen spouse impinges on a constitutionally protected interest of a

13    U.S. citizen; and (2) if so, whether the denial and citation to the specific ground of inadmissibility

14    was sufficient process. The Supreme Court held that "a citizen does not have a fundamental

15    liberty interest in her noncitizen spouse being admitted to the country" and as such could not

16    invoke the exception to the doctrine of nonreviewability. *Id.* at 1821.

17          *Muñoz* is materially distinguishable from the present case in at least two ways. First, and

18    foremost, the issue before the Supreme Court was *not* whether the officer's decision was *final*, but

19    rather whether the exception to consular nonreviewability applied such that a court could consider

20    whether the government furnished a "facially legitimate and bona fide reason" for denying the

21    visa. *Id.* at 1821; *see also id.* at 1828 n.1 (Sotomayor, J., dissenting). Here, Plaintiff does not

22    assert that the exception to the doctrine applies. Instead, she argues that the doctrine has not been

23    triggered because she is not challenging a final decision. Plaintiff is asking the Court to order

24    Defendants to issue a final decision.

25          Second, in *Muñoz*, the Supreme Court did not address a situation where the visa

26    application had been refused and was stuck in indefinite "administrative processing." Here, it's

27    unclear what, if anything, has happened since the case was placed in "administrative processing."

28    As another judge of this Court explained, "[t]he INA and related regulations do not account for

8

this 'administrative processing' designation, which has the effect of placing [noncitizen's] application in administrative limbo." *Jafarzadeh v. Blinken*, No. 1:23-cv-0770 KJM CDB, 2024 WL 3937417, at *3 (E.D. Cal. Aug. 26, 2024).

*Allen* and *Bechirian* are similarly distinguishable. Like *Muñoz*, *Allen* dealt with a challenge to a consular officer's final decision on the merits. So too did *Bechirian*. 2022 WL 260052. Here, the parties do not dispute the validity of the doctrine and its application to a consular officer's final decision on the merits. ECF No. 12-1 at 3. Rather, the parties disagree on whether there has been a final decision on the merits with respect to Plaintiff's father's visa application. ECF No. 7 at 7-8; ECF No. 10 at 12, 13, 15, 16; ECF No. 11 at 3; ECF No. 12-1 at 3. As described below, the consular officer's decision in the present case is *not* final.

Accepting Plaintiff's allegations as true and construing them in the light most favorable to her, the consular officer's refusal of Plaintiff's father's visa application under §221(g), the communication to Plaintiff's father that his visa was under "administrative processing," the regulations regarding when a visa application is "terminated" after refusal under § 221(g), and the DOS website describing "administrative proceedings,"[3] indicate that Plaintiff's father's visa application is pending final adjudication.[4] In reaching this conclusion, the Court follows several

[3] *See* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html ("Upon completion of the case-specific administrative processing, the consular officer might conclude that an applicant is now qualified for the visa for which he or she applied."); https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-10-prepare-for-the-interview/step-12-after-the-interview.html ("Some visa applications refused under 221(g) of the [INA] may require further administrative processing. . . . At the conclusion of the administrative processing period, the consular officer may conclude that an applicant is now qualified for the visa for which he or she applied. . . . [B]efore making inquiries about the status of administrative processing, applicants should wait at least 180 days from the date of interview or submission of supplemental documents . . . "). The Court may properly take judicial notice of information available on the DOS website, *see Abassi v. Gaudiosi*, 2024 WL 1995246 (E.D. Cal. May. 6, 2024), without converting the motion to dismiss into a motion for summary judgment, *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).
[4] Defendants state it is not disputed that they received Mr. Sheikhalizadehjahed's answers to the Form DS-5535, Supplemental questions a month after his consular interview. ECF No. 7-1 at 3. The Court notes, without relying on this fact in making its decision, that this suggests that the consular officer did not reach a final decision at the interview because they requested more information. Whenever an officer requests additional information because they lack adequate information to make a visa eligibility determination, that information becomes part of the application, and is considered when making an eligibility determination under 8 U.S.C. § 1201(g). *See* 42 C.F.R. § 42.63 (additional information and statements made by an applicant at

other decisions finding that when a case is refused and placed in "administrative processing" it cannot be said that a final decision has been rendered. *Jafarzadeh*, 2024 WL 3937417, at *3 ("the instructions to fill out an additional questionnaire, the lack of the term 'permanent termination' or 'final adjudication,' and the fact that [the noncitizen's] application is still undergoing administrative processing show there has been no final determination on his visa application"); *Ali v. Ordeman*, No. 2:23-cv-2822 CKD, 2024 WL 2274912, at *4 (E.D. Cal. May 20, 2024) (placing a visa application in administrative processing by a refusal under 8 U.S.C. § 1201(g) is not a final decision); *Abassi v. Gaudiosi*, No. 1:23-cv-01573-CDB, 2024 WL 1995246, at *4 (E.D. Cal. May. 6, 2024) (noting "prevailing position … that the doctrine [of consular nonreviewability] does not bar review of an as-yet final adjudication of a visa application in administrative processing"); *Mohamed v. Pompeo*, No. 19-01345, 2019 WL 4734927, at *4 (E.D. Cal. Sept. 27, 2019); *Rasoulzadeh v. Tillerson*, No. 17-2399, 2018 W 1426965, at *2 (S.D. Cal. Mar. 22, 2018) (denying motion to dismiss as moot because "there is a dispute of fact as to whether [the] visa application has been denied or whether it is still undergoing administrative processing"); *Gonzalez v. Baran*, No. 21-05902, 2022 WL 1843148, at *3 (C.D. Cal. Jan. 11, 2022) (holding similarly and collecting authority); *Taherian v. Blinken*, No. 23-01927, 2024 WL 1652625, at *3 (C.D. Cal. Jan. 16, 2024) (same); *Shahijani v. Laitinen*, No. 23-03967, 2023 WL 6889774, at *3 (C.D. Cal. Oct. 6, 2023) (same).  Several district courts in other circuits have reached the same conclusion. *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. To the United Sates v. Kerry*, 168 F. Supp. 3d 268, 285-89 (D.D.C. Apr. 8, 2020) (collecting authority across the country).

Moreover, it is evident to the Court that "administrative processing" amounts to nothing more than holding those cases in abeyance for an undefined period of time. *Jafarzadeh*, 2024 WL 3937417, at *3 (E.D. Cal. Aug. 26, 2024) ("[t]he INA and related regulations do not account for this 'administrative processing' designation, which has the effect of placing [noncitizen's] application in administrative limbo . . .").[5]  In such case, it cannot be said a final decision has

---

the request of the officer "are considered papers submitted with the [noncitizen's] application within the meaning of INA § 221(g)(1)").

[5]  Although not binding, the Foreign Affairs Manual (FAM) also suggests that a visa "refusal" is

1   been rendered.  *Patel v. Reno*, 134 F.3d 929, 931-32 (9th Cir. 1997) (finding that a refusal was

2   not a final decision where the consul admitted it was holding the application in abeyance).

3          Accordingly, the doctrine of consular nonreviewability does not apply.

4   **B.  Plaintiff States Claims under the APA and Mandamus Acts**

5          Under the APA, "[a] court can compel agency action under [§ 706(1)] only if there is a

6   specific, unequivocal command placed on the agency to take a discrete agency action, and the

7   agency has failed to take that action."  *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d

8   1068, 1075 (9th Cir. 2016) (internal marks and citation omitted).  "The agency action must be

9   pursuant to a legal obligation 'so clearly set forth that it could traditionally have been enforced

10  through a writ of mandamus.'"  *Id.* at 1075-76 (citation omitted).

11         The Mandamus Act, similarly, "provides district courts with mandamus power 'to compel

12  an officer or employee of the United States or any agency thereof to perform a duty owed to the

13  plaintiff.'"  *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting 28 U.S.C.

14  § 1361).  "Although the exact interplay between these two statutory schemes has not been

15  thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus

16  under the [Mandamus Act] 'in essence,' as one for relief under § 706 of the APA."  *Id.* (quoting

17  *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).  Because the relief

18  sought is essentially the same under the APA and the Mandamus Act, the Court analyzes the

19  sufficiency of both claims together.  *See Abassi*, 2024 WL 1995246 at *5.

20         Defendants argue that Plaintiff's APA and mandamus claims must fail because she cannot

21  point to a clear duty to act.  ECF No. 7 at 9.  Specifically, Defendants argue that "Defendants do

22  not owe Plaintiff's father a non-discretionary duty to reconsider whether the refusal of his visa

---

23  nothing more than an administrative abeyance.  *See Scales v. Immigration and Naturalization
    Serv.*, 232 F.3d 1159, 1166 (9th Cir. 2000) (FAM "lack[s] the force of law" because it was not
24  issued pursuant to notice-and-comment rulemaking).  The FAM states that "once a visa
    application has been properly completed and executed before a consular officer," the consular
25  officer must as a matter of course refuse the visa by end of the working day or the next working
    day even if "a case is medically deferred," the consular officers decides "to make additional local
26  inquiries or conduct a full investigation" or request an advisory opinion from the Department, or
    "the only deficiency is a clearance from another post."  9 FAM 504.1-3(i)(1)(a)-(d).  The FAM
27  also states that "when the case required additional administrative processing, which has been
    completed," the consular officer "should overcome the previous refusal, allowing the case to be
28  *adjudicated*."  9 FAM 504.11-4(A)(b) (emphasis added).

11

1  case may be overcome within a specified timeframe."  *Id.*  In opposition, Plaintiff argues that

2  under 8 U.S.C. § 1202(b) Defendants owe a clear duty to adjudicate all immigrant visas, and that

3  under 5 U.S.C. § 555(b) they must do so "within a reasonable time."  ECF No. 10 at 16.

4  Defendants reply that relying on the last sentence in 8 U.S.C. § 1202(b) to establish a non-

5  discretionary duty is unsound.  ECF No. 11 at 6-8.  They also argue that 5 U.S.C. § 555(b) cannot

6  impose the duty Plaintiff claims and the delay in this case cannot be said to be unreasonable.

7  ECF No. 11 at 8-15.

8  **1.  Defendants Have a Nondiscretionary Duty to Act**

9  As an initial matter, Defendants misconstrue the nondiscretionary duty identified by

10  Plaintiff.  In the complaint and the opposition to the motions, Plaintiff's position is that Plaintiff is

11  not asking Defendants to reconsider a consular officer's decision.  ECF No. 1 at 2, 6-7.  Rather,

12  Plaintiff is asking that Defendants complete adjudication of her father's visa application, which

13  has not been completed.  *Id.*  As such, the question is whether Defendants owe Plaintiff a

14  nondiscretionary duty to adjudicate her father's visa application to a conclusion.  The Court

15  concludes that it does.

16  The undersigned recognizes a split among courts, even among judges within this Court, on

17  the issue of whether there is a mandatory duty to review and adjudicate immigrant visa

18  applications under § 1202(b).  *See Khan v. Blinken*, No. 2:23-cv-02814-CKD, 2024 WL 3446432,

19  at *4 (E.D. Cal. July 17, 2024) (recognizing the split); *Iqbal v. Blinken*, 2023 WL 7418353, at *6

20  (E.D. Cal. Nov. 9, 2023) (finding that "§ 1202(b) does impose a mandatory duty on defendants to

21  review and adjudicate the beneficiary plaintiffs' visa applications"); *Council on American-Islamic*

22  *Relations, California v. Blinken*, No. 2:22-cv-1500 TLN KJN, 2022 WL 4472914, at * 3-4 (E.D.

23  Cal. Sept. 25, 2022) (plaintiffs did not show likelihood of success on the merits where § 1202(b)

24  did not impose a mandatory duty for the State Department to adjudicate any visa).

25  Some courts have held that § 1202(b) imposes a mandatory, nondiscretionary duty to

26  review and adjudicate a visa application.  *See Iqbal*, 2023 WL 7418353, at *6; *Durham v.*

27  *Blinken*, No. 24-02868 PSG (MRWx), 2024 WL 381146, at *4 (C.D. Cal. Aug. 8, 2024) (same);

28  *Azam v. Bitter*, 2024 WL 912516, at *5-6 (D.N.J. Mar. 4, 2024) (same); *Igal v. U.S. Consulate*

1    *General in Johannesburg*, No. 2:23-cv-4160, 2024 WL 2882653, at *6 (S.D. Ohio June 7, 2024).

2    Other courts have held that § 1202(b) imposes no such duty and only indicates *who* adjudicates

3    visa applications. *Mueller v. Blinken*, No. 4:23-CV-24, 2023 WL 4759245, at *5 (E.D. Va. July

4    17, 2023) (§ 1202(b) does not impose a duty to act on a visa application); *Council on American-*

5    *Islamic Relations, California*, 2022 WL 4472914, at * 3-4. A third set of courts have found an in

6    § 1202(b) imposes a mandatory duty to adjudicate an individual immigration visa application

7    only *after* the consular interview. *Farooq v. Blinken*, 2023 WL 5658357, at *3 (C.D. Cal. Aug.

8    11, 2023); *Khalili-Araghi v. Bitter*, 2023 WL 5988590, at *4 (N.D. Cal. Sept. 13, 2023).

9        Absent binding precedent, the Court is persuaded that § 1202(b) imposes a non-

10    discretionary duty to review and adjudicate visa applications. The initial refusal of Plaintiff's

11    father's visa application while placing it in "administrative processing" does not dispense with

12    this duty because there has been no final adjudication. Any other conclusion about § 1202(b) and

13    circumstances like these would allow DOS to evade any judicial review of delayed adjudications

14    by issuing *pro forma* refusals while continuing to administratively process cases. The Court is

15    unwilling to adopt "statutory interpretations which would produce absurd results." *Compton*

16    *Unified Sch. Dist. v. Addison*, 598 F.3d 1181, 1184 (9th Cir. 2010).

17        Moreover, even if the Court were to conclude that § 1202(b) does not impose a

18    nondiscretionary duty to render a final adjudication in a visa application, § 555(b) of the APA

19    independently creates a non-discretionary duty to do so. *Khan*, 2024 WL 3446432, at *5 ("A

20    non-discretionary duty is upon the Government under 5 U.S.C. § 555, which requires adjudication

21    of immigrant visa applications within a reasonable time."); *Iqbal*, 2023 WL 7418352 at *7

22    (finding that "[t]he APA imposes a clear nondiscretionary duty" on defendants to adjudicate

23    immigrant visa petitions within a reasonable time; *Akm Tareque v. Rena Bitter et al*, 2024 WL

24    3914507, at *4 (C.D. Cal. Aug. 13, 2024); *see also, e.g., Ahrary v. Curda*, 2012 WL 1641411, at

25    *2 (E.D. Cal. May 9, 2012) (section 555(b) of the APA imposed a nondiscretionary duty on

26    defendants to adjudicate I-485 applications); *but see Karimova v. Abate*, 2024 WL 3517852, at *3

27    (D.C. Cir. 2024) (section 555(b) of the APA does not place a clear nondiscretionary duty on a

28    *////*

1   "consular officer to re-adjudicate her already-refused application").[6]  Section 555(b) of the APA

2   states, "[w]ith due regard for the convenience and necessity of the parties or their representatives

3   and within a reasonable time, each agency *shall proceed to conclude* a matter presented to it."

4   5 U.S.C. § 555(b) (emphasis added).

5          Defendant nonetheless contends that "[t]here is no statute or regulation that imposes a

6   non-discretionary duty on consular officers to reconsider, within a specified timeframe, a refused

7   visa application."  Although there is not a statute or regulation that sets a specific timeframe—

8   more on that below—there is a regulation that creates a nondiscretionary duty to reconsider a

9   refusal under some circumstances.  22 C.F.R. § 42.81(e) ("If a visa is refused, and the applicant

10  within one year from the date of refusal adduces further evidence tending to overcome the ground

11  of ineligibility on which the refusal was based, the case shall be reconsidered."); *see Rivas v.*

12  *Napolitano*, 714 F.3d 1108, 1111-12 (9th Cir. 2013) (holding that a court can compel agency

13  action under the APA based on 22 C.F.R. § 42.81(e) because the regulation imposes a

14  nondiscretionary duty to reconsider a visa refusal where an applicant presents further evidence

15  tending to overcome the ground of ineligibility).  Plaintiff's counsel, in response to one of the

16  Court's questions during the hearing on the motions, for the first time argued that this additional

17  nondiscretionary duty applies in this case.  This regulation is yet another source establishing a

18  nondiscretionary duty on DOS to adjudicate a visa application initially refused that involves

19  ongoing administrative processing.

20              **2.  Plaintiff Has Sufficiently Plead Unreasonable Delay**

21          In determining whether an agency action was unreasonably delayed, courts consider the

22  six "TRAC factors."  *In re Nat. Res. Def. Council, Inc.,* 956 F.3d 1134, 1138 (9th Cir. 2020).  The

23  ─────────────────
    [6]  The Court is not persuaded by *Karimova*'s holding on § 555(b).  *Karimova* primarily relied on
24  the FAM to determine that the visa refusal constituted a final decision.  2024 WL 3517852 at *1,
    2.  As noted above, in the Ninth Circuit, the FAM "lack[s] the force of law."  *Scales*, 232 F.3d at
25  1166.  Accordingly, the Court looks to regulations, including 22 C.F.R. §§ 42.63(c) and 42.83(b),
    and the information DOS communicated to Plaintiff's father, to define the concept of final
26  adjudication.  Based on these sources, a refusal plus administrative processing is equivalent to
    placing a case in abeyance—thus suggesting the case has not been adjudicated to a conclusion.  In
27  any event, to the extent the FAM is informative, it too suggests that the decision here is not final.
    *See* note 5, *supra*.  It is worth noting that at least one district court judge within the D.C. Circuit
28  has "decline[d] to follow" *Karimova*.  *Hajizadeh v. Blinken*, No. 23-cv-1766 (LLA), 2024 WL
    3638336, at *3 n.3 (Aug. 2, 2024).

                                              14

factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with
> which it expects the agency to proceed in the enabling statute, that statutory scheme
> may supply content for this rule of reason; (3) delays that might be reasonable in the
> sphere of economic regulation are less tolerable when human health and welfare are
> at stake; (4) the court should consider the effect of expediting delayed action on
> agency activities of a higher or competing priority; (5) the court should also take
> into account the nature and extent of the interests prejudiced by delay; and (6) the
> court need not find any impropriety lurking behind agency lassitude in order to hold
> that agency action is unreasonably delayed.

*Id*. at 1138–39 (quoting *Telecommc' ns Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) (TRAC)).

Defendants argue that the TRAC factors for determining unreasonable delay weigh in their favor. *Id.* at 11-21.  Plaintiff argues that applying the TRAC factors at this stage in the litigation is premature.  ECF No. 10 at 21-22.  Alternatively, Plaintiff argues that the factors weigh in her favor. *Id.* at 22-28.  On reply, and in supplemental filings, Defendants point to several cases that have applied the TRAC factors at the motion to dismiss stage and argue that it is not premature to do so.  ECF No. 11 at 9; ECF No. 20 at 2-3.

Given the fact-intensive nature of the TRAC factors, courts disagree on whether they should be applied to resolve a motion to dismiss. *Iqbal*, 2023 WL 7418353 at *7 (collecting cases); *Li v. Blinken*, No. 8:23-cv-2142 DOC KES, 2024 WL 2107341, at *3 (C.D. Cal. Apr. 4, 2024) (same).  Absent binding case law, this Court agrees with Plaintiff and other courts that have found TRAC is more "appropriately applied after further briefing and discovery." *Salarian v. Blinken*, No. 23-cv-1315 LL BJC, 2024 WL 4008758, at *4 (S.D. Cal. Aug. 30, 2024); *see Durham v. Blinken*, No. CV 24-02868, at *5 (C.D. Cal. Aug. 8, 2024) ("Although the parties have briefed the TRAC factors analysis, the Court finds it inappropriate to conduct the fact-analysis at this stage."); *Iqbal*, 2023 WL 7418353 at *8 (denying motion to dismiss because "[t]his court finds the reasonableness inquiry is best resolved ultimately on a full factual record"); *Fimbres v. Cohan*, No. 23-cv-0562 TUC MAA, 2024 WL 3535402, at *4 (D. Ariz. July 25, 2024) (denying motion to dismiss and declining to apply TRAC at this stage); *Tigranyan v. Gardland*, No. 2:24-cv-0741 SPG RAO, 2024 WL 3740049, at *4 (C.D. Cal. July 1, 2024) (denying motion to dismiss

as premature "because the TRAC analysis is necessarily fact-intensive" and "is more appropriate applied after some discovery than at the pleading stage"); *Li*, 2024 WL 2107341 at *3 (declining to apply TRAC factors on motion to dismiss because they "are fact-intensive and inappropriate for resolution on a motion to dismiss"); *Velagapudi v. United States Citizenship and Immigr. Services*, et al., No. 4:22-CV-295 SRW, 2022 WL 4447409, at *6-8 (E.D. Mo. Sept. 23, 2022) (denying motion to dismiss because application of TRAC factors was not possible at this stage in the litigation); *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 117 (D.D.C. 2020) ("At the motion to dismiss stage, this Court need not consider whether the agency delay alleged is unreasonable.")[7]  There is nothing unusual about abstaining from undertaking such a fact-intensive inquiry at the pleading stage.  Courts regularly do so.  *See Quiero v. Muniz*, 2015 WL 13738994, at *6 (M.D. Pa. Aug. 3, 2015) ("[T]he Court is unable to make a proper assessment of the *Turner* factors at the motion to dismiss stage because the fact-intensive inquiry called for in *Turner* requires at least some development of the evidentiary record."); *Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128 (D.N.J. 2000) ("Given the fact-intensive nature of the analysis and the number and range of factors to consider, this Court concludes that it is inappropriate to grant a motion to dismiss at this early stage."); *Grunblatt v. UnumProvident Corp.*, 270 F. Supp. 2d 347, 352 (E.D.N.Y. 2003) (stating that veil-piercing "is typically a fact specific inquiry not amenable to resolution [on] a motion to dismiss") (internal quotations omitted)).  But the Court must nonetheless ensure that Plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Plaintiff has done that.

As noted above, Plaintiff alleges the following: her father attended his consular interview

---

[7]  *But see Abassi*, 2024 WL 1995246, at *3, 8 (analyzing the TRAC factors on a motion to dismiss after declining to convert Defendant's motion for summary judgment); *Aminzadeh v. Blinken*, No. 2:24-cv-02025 DSF MRW, 2024 WL 3811153, at  *5 (C.D. Cal. Aug. 9, 2024) (applying TRAC factors at the motion to dismiss stage); *Akm Tareque*, *5 (finding it appropriate to apply the TRAC factors on a motion to dismiss because the court had the benefit of the briefing on the issue); *Azeez v. Murphy*, No. 23-cv-1947 (CRC), 2024 WL 3924565, at *4 (D.D.C. Aug. 23, 2024) (applying the TRAC factors on a motion to dismiss after determining that the record contained enough facts to do so).

in February 2023; after the interview his application was refused under INA § 221(g) and placed in administrative processing; administrative processing is a temporary measure, signaling that processing is ongoing while allowing the DOS to gather additional information; and since the interview Plaintiff and her father have inquired as to the status of his visa on numerous occasions and received no meaningful responses.  ECF No. 1 at 6-7.  Because of this, it's unclear when, if ever, Plaintiff's father's visa application will be finally adjudicated.  *See id.* at 7.  After waiting 14 months without an update on the status of Plaintiff's father's visa application, Plaintiff filed this case.  ECF No. 1.  The current delay is approaching 20 months.[8]  The Court finds that such delay, without the benefit of further justification or explanation as to why gathering additional information is taking so long, is enough to plausibly allege an unreasonable delay.

In making this determination, the Court does not ignore the fact that Defendants have cited to many cases where courts have found similar or longer delays to not be unreasonable.  ECF No. 7 at 15 n.4 (citing district court cases throughout the United States); ECF No. 20 (citing district court cases within the Ninth Circuit).  However, the Court finds most of those cases inapposite where they dealt with pre-consular interview delays, delays in student- or employment-based visa applications (rather than family-based applications), or delays justified to some extent by the COVID pandemic.  *See e.g.*, *Ghalambor v. Blinken*, No. CV 23-9377 MWF (BFMx), 2024 WL 653377 (C.D. Cal. Feb. 1 2024) (19 month pre-interview delay); *Ahmed v. United States Dep't of State*, No. 23-cv-2474 SVK, 2024 WL 315705 (ND Cal Jan 26, 2024) (20 month pre-interview delay); *Khalili-Argahi*, 2023 WL 5988590 (N.D. Cal. Sept. 13, 2023) (approximately 30 month pre-interview delay); *Khan v. Bitter*, No. 23-1576, 2024 WL 756643 (D.D.C. Feb 23, 2024) (29 month pre-interview delay); *Armah v. United States Dep't of State*, No. 22-1714 (BAH), 2024 WL 2721634 (D.D.C. May 28, 2024) (24 month pre-interview delay); *Daneshvarkashooli v. Blinken*, 23-1225 (RJL), 2024 WL 1254075 (D.D.C. Mar. 25, 2024) (17-

---

[8]  At the hearing, the parties agreed that the proper calculation of the delay is from the date of the consular interview to the date of the court's decision on the delay.  This appears to be an accepted approach in post-interview delay cases.  *See e.g., Aminzadeh v. Blinken*, No. 2:24-cv-2025 DSF MRW, 2024 WL 3811153, at *6 (C.D. Cal. Aug. 9, 2024) (the delay from the time of the interview to the date of the court's decision was not unreasonable); *Mosayebian v. Blinken*, No. 24-cv-0130 JLS (MMP), 2024 WL 3558378, at *7-8 (S.D. Cal. July 25, 2024) (same).

24 month post interview delay in student-visa application case); *Rashidian v. Garland*, No. 1:23-cv-1187 (ACR), 2024 WL 1076810 (D.D.C. Mar. 8, 2024) (17-21 month post-interview delay in student-visa application case); *Farooqui v. Dep't of State*, No. 23-1081 (TSC), 2024 WL 1178468 (D.D.C. Mar. 8, 2024) (25 month post-interview delay in business visa application case); *Khan v. Blinken*, No. 23-3474 (TJK), 2024 WL 2880426 (D.D.C. June 7, 2024) (2.5 year pre-interview delay in employment-based visa case); *Yacoub v. Blinken*, No. 21-cv-983 (TSC), 2022 WL 4598681 (D.D.C. Sept 30, 2022) (3.5 year delay for K-1 visa due to COVID). As for cases that are analogous to the present facts—family-based post-consular-interview delays—the Court has reservations in following several of them because they rely on other cases that are inapposite to conclude that the given post-interview delay is not unreasonable.

For example, in *Ramirez Serrato*, in determining that a 17-month post-consular-interview delay was not unreasonable, the court relied on the fact that in the immigration context delays ranging from three to five years have not been found unreasonable. *Ramirez Serrato v. Blinken*, No. 2:23-cv-0177 MKD, 2024 WL 3640459, at *4 (E.D. Wash. Aug. 2, 2024). But the cases relied upon by *Ramirez* and the cases relied upon in those cases are distinguishable. *See id.* (citing *Kapoor v. Blinken*, which deals with delays in a pre-interview context and cites to cases regarding delays in the asylum and adjustment of status contexts, 2022 WL 181217, at *4 (N.D. Cal. Jan. 20, 2022)). Asylum and adjustment of status applicants are differently situated because the entire adjudication process takes place within the United States, and family separation is not always a concern.

Similarly, in determining that a 17-month delay was not unreasonable in a post-interview delay case, the court in *Morales* cited to *Ortiz* for the proposition that delays of five, six, and seven years are not unreasonable in the immigration context. *Morales v. Mayorkas*, 23-cv-1758 BEN (MSB), 2024 WL 2884554 at *3 (S.D. Cal. June 7, 2024) (quoting *Ortiz v. U.S. Dep't of State*, Case No. 22-cv-0508-AKB, 2023 WL 4407569 *8 (D. Idaho July 7, 2023)). But *Ortiz* dealt with a pre-interview delay and relied on cases like *Siwen Zhang v. Cissna*, No. CV 18-9696, 2019 WL 3241187 (C.D. Cal. Apr. 25, 2019), which dealt with a four-year delay in an asylum case.

Instead of comparing delays in immigration cases generally, it is best to embrace the fact that TRAC is fact-intensive for a reason—not every immigration application process is the same and a justification for a delay in one context may not suffice in another context.

The Court also finds that Plaintiff has sufficiently pleaded an unreasonable delay in this case because the delay substantially exceeds the 180-day timeframe Congress has suggested is reasonable.  *See* 8 U.S.C. § 1571(b) ("[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application" with one exception).  Although the Ninth Circuit has held that similar "sense of Congress" language is "non-binding, legislative dicta" which creates no obligations, *see Yang v. California Dep't of Soc. Serv.*, 183 F.3d 953, 961-62 (9th Cir. 1999), it does provide valuable insight as to what Congress thought would be reasonable in adjudicating immigration cases.  The Court is not suggesting that delays beyond 180 days are in and of themselves unreasonable in all types of immigration cases.  However, where Plaintiff has alleged a delay more than three times as long, almost 20 months, and there is no justification for the delay, Plaintiff has sufficiently plead an unreasonable delay in her father's case.

Finally, the Court finds that the Plaintiff has sufficiently pleaded an unreasonable delay because she has alleged significant hardship as a result of the lengthy delay.  ECF No. 1 at 3, 4.

Because dismissal is only proper under Rule 12(b)(6) "if it appears beyond doubt that the non-movant can prove no set of facts to support its claims," *Boquist*, 32 F.4th at 773-74, and that is not the case here, the Court denies the motion to dismiss.

### C.  Plaintiff fails to state a Fifth Amendment Due Process Claim

Defendants argue that Plaintiff fails to state a claim for a violation of the Fifth Amendment Due Process clause because she has failed to identify a protected interest at stake.  ECF No. 7 at 23.  In opposition, Plaintiff argues she has a statutorily created right under the INA, APA, and Mandamus Act to have Defendants complete adjudication of her father's visa application.  ECF No. 10 at 28.  She also argues that she has "an implied fundamental right to family unity."  *Id.* at 29.  Defendants respond that Plaintiff has failed to identify any authority that supports her position, and that *Muñoz* forecloses her argument.  ECF No. 11 at 16.

19

The Court agrees that *Muñoz* forecloses Plaintiff's due process claim.  *See Muñoz*, 144 S.Ct. at 1825 (holding that a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the United States).  As the Supreme Court explained, "Congress can use its authority over immigration to prioritize the unity of the immigrant family" "[b]ut the Constitution does not require this result[.]"  *Muñoz*, 144 S.Ct. at 1825.  "Thus, while Congress may show special solitude to noncitizen spouses, such solicitude is 'a matter of legislative grade rather than fundamental right.'"  *Id.* (citing *Din*, 576 U.S. at 97 (plurality opinion)).

### D.  Defendants' Motion for Summary Judgment is Premature

Defendants also seek a summary judgment "based on the complaint filed April 17, 2024; the other filings in the action; the accompanying points and authorities, declaration, and statement of undisputed material facts; and any written or oral arguments that may be made hereinafter." ECF No. 7 at 3.  The evidence supporting Defendants' motion for summary judgment is a declaration by a DOS attorney-advisor who summarized DOS's electronic database information concerning Mr. Sheikhalizadehjahed.  ECF 7-2, ¶ 3.  The DOS attorney-advisor states that a consular officer refused Mr. Sheikhalizadehjahed's visa application, determining that "additional security screening was required." *Id*. ¶ 9.  The DOS attorney-advisor also states that on March 27, 2023, Mr. Sheikhalizadehjahed submitted "answers to questions consistent with Form DS-5535" and that "additional security screening" was ongoing as of June 18, 2024. *Id*. ¶ 10. Plaintiff does not dispute these facts, but responds that it is premature to rule on a motion for summary judgment where Plaintiff has pled sufficient facts to state a claim and is prejudiced by the lack of access to relevant information, such as "State Department procedures, consular conditions, and methodologies," "specific priorities," "consular staffing and productivity."[9]  ECF No. 10 at 11.  Defendants respond that for purposes of Rule 56(d) Plaintiff fails to "identify, with any specificity, what additional facts require further development."  ECF No. 11 at 10-11.

---

[9]  Plaintiff objects that the declaration constitutes inadmissible hearsay.  ECF No. 10 at 29. While the Court need not resolve admissibility questions at this point, given that summary judgment is premature, such standard information from government databases likely falls within a hearsay exception.  *See Khalili-Araghi*, 2023 WL 5988590, at *4 (noting that "at the summary-judgment stage, courts do not focus on the admissibility of the evidence's form and instead focus on the admissibility of its contents" and finding that DOS database information which is "kept in the regular course of business of [DOS], could be presented in an admissible form at trial").

1   As an initial matter, the Court recognizes that Defendants' motion for summary judgement

2   is properly filed and is displeased with Plaintiff attorney's failure to comply with Rule 56.  For

3   future purposes, Plaintiff's attorney is referred to Rule 56 of the Federal Rules of Civil Procedure

4   and Local Rule 260(b), and on notice that failure to comply with these requirements may result in

5   the Court considering the facts undisputed and granting summary judgment without further

6   opportunity to correct.  *See* Fed. R. Civ. P. 56(e).

7   Next, although Rule 56 "allows a motion for summary judgment to be filed at the

8   commencement of an action, the Court recognizes that in some cases it may be premature before

9   an answer has been filed or discovery has commenced.  *See* Fed. R. Civ. P. 56, Advisory

10   Committee's Notes (2010 Amendments, Note to Subdivision (b)).  Indeed, judges from this Court

11   and other courts have denied pre-answer and pre-discovery motions for summary judgement as

12   premature despite technical compliance with Rule 56.  *See Sayyedalhosseini v. Los Rios*

13   *Community College District*, 2:23-cv-1571 DJC JDP, 2024 WL 2883475, at *6 n.6 (E.D. Cal.

14   June 6, 2024); *Giles v. San Joaquin Valley Rehab. Hosp.*, No. 1:21-cv-0732 JLT SKO, 2023 WL

15   5806539, at *1 (E.D. Cal. Sept. 7, 2023) (collecting E.D. Cal. cases); *Ahuruonye v. United States*

16   *Dep't of Interior*, 2016 WL 11956733, at *3 n.5 (D.D.C. Dec. 15, 2026) (citing several cases in

17   D.D.C.); *see also Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000)

18   ("[o]nly in the rarest of cases" may summary judgment "be granted against a plaintiff who has not

19   been afforded the opportunity to conduct discovery").  To the extent that this is a case that should

20   be decided wholly or partially on an administrative record—a question the Court does not decide

21   today—summary judgment would also be premature without that record.  *See e.g., Singh v.*

22   *Cissna*, no. 1:18-cv-0782 SKO, 2018 WL 4770737, at *11 (E.D. Cal. Oct. 1, 2018) (declining to

23   rule on a motion for summary judgment in an APA case without the benefit of the complete

24   administrative record).  Accordingly, Defendants' motion for summary judgment is denied

25   without prejudice to be refiled or supplemented at a later date.

26   **IV.    Conclusion**

27   Accordingly, IT IS ORDERED that Defendants' Motion to Dismiss (ECF No. 7) be

28   DENIED and that Defendants' Motion for Summary Judgment be DENIED without prejudice to

1    refiling or supplementation.  Plaintiff's motion to file sur-reply (ECF No. 12) is granted and is

2    deemed filed.  A scheduling order will follow.

3    DATED: October 15, 2024

4

5    _____

6    SEAN C. RIORDAN
     UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28